Filed 8/8/23  P. v. Carrillo CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H049877 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS110071B) |
| v. | |
| BENJAMIN PUGA CARRILLO, | |
| Defendant and Appellant. | |

Appellant Benjamin Puga Carrillo appeals from the trial court's summary denial of his petition for resentencing under Penal Code section 1172.6.[1]  On appeal, Carrillo argues that the trial court erred by denying his petition without reappointing counsel because the jury instructions and the prosecutor's argument reflect that he may have been convicted of first degree murder under a theory of imputed malice.  Based on the record of conviction, however, we conclude that the trial court's error in failing to appoint counsel was harmless.  In convicting Carrillo of the first degree murder of James Lopez, the jury expressly found that the murder was willful, deliberate, and premeditated, and

---

[1] Unspecified statutory references are to the Penal Code.  We note that in 2022, the Legislature renumbered section 1170.95 to section 1172.6 without substantive change to the text of the statute.  (Stats. 2022, ch. 58, § 10, eff. June 30, 2022.)  Although Carrillo's petition references section 1170.95, we refer to the current version of the statute for clarity.

that the murder was committed by discharging a firearm from a vehicle, and neither the jury instructions nor the closing argument provide the jury with means to convict Carrillo of first degree murder without finding that he had an intent to kill. Thus, Carrillo is ineligible for relief under section 1172.6, subdivision (a) as a matter of law. We affirm the order denying his petition for resentencing.

## I.    BACKGROUND

### A.    *The Trial and Direct Appeal*[2]

In 2011, following a drive-by shooting, the Monterey County District Attorney filed the operative amended information charging Carrillo and codefendant Valentin Navarro Rivas with first degree murder (§ 187, subd. (a); count 1 (victim 1, James Lopez)), attempted murder (§§ 664, 187; count 2 (victim 2, Ricardo E.)), and shooting at an occupied vehicle (§ 246; count 3). The district attorney further alleged as sentencing enhancements that the offenses were committed for the benefit of a street gang (§ 186.22, subd. (b)(1)), and that both Rivas and Carrillo were principals in each of the offenses, in which at least one principal discharged a firearm (§12022.53, subds. (c) & (d)).

In instructing the jury, the trial court administered pattern instructions on murder, CALCRIM Nos. 520 and 521, which respectively defined malice, both express and implied, and the degrees of murder. The trial court's modified version of CALCRIM No. 521 specified two theories of first degree murder—(1) the murder was willful, deliberate, and premeditated and (2) the murder was committed by discharging a firearm from a motor vehicle. When orally reciting the jury instructions, however, the trial court erroneously told the jury: "The defendant has been prosecuted for murder under two theories: [¶] 1. Malice aforethought, [¶] AND [¶] 2. Felony murder." The trial court

---

[2] For the procedural history of the case, we rely in part on the published opinion in Carrillo's direct appeal, *People v. Rivas et al.* (2013) 214 Cal.App.4th 1410 (*Rivas*). (See § 1172.6, subd. (d)(3).)

2

did not otherwise provide any instruction on a felony murder theory of liability, and the written form of CALCRIM No. 521 given to the jury correctly identified the prosecution's second theory as discharging a firearm from a motor vehicle.

CALCRIM No. 521 went on to define a willful, deliberate, and premeditated murder in pertinent part as follows: "The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted willfully if he intended to kill. The defendant acted deliberately if he carefully weighed the considerations for and against his choice, and knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before completing the acts that caused death." And CALCRIM No. 521 defined first degree murder by shooting from a motor vehicle as follows: "The defendant is guilty of first degree murder if the People have proved that the defendant murdered by shooting a firearm from a motor vehicle. The defendant committed this kind of murder if: [¶] 1. He shot a firearm from a motor vehicle; [¶] 2. He intentionally shot at a person who was outside the vehicle; and [¶] 3. He intended to kill that person."

The trial court also instructed the jury on direct and aider/abettor liability, including CALCRIM No. 400: "A person may be guilty of a crime in two ways. One, he may have directly committed the crime. I will call that person the perpetrator. Two, he may have aided and abetted a perpetrator, who directly committed the crime. [¶] A person is guilty of a crime whether he committed it personally or aided and abetted the perpetrator. [¶] Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime."

The trial court also administered CALCRIM No. 401, the standard instruction on direct aiding and abetting liability, which stated in pertinent part that to prove a defendant guilty based on a theory of aiding and abetting, the People must prove: "1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator

3

intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime."

The jury was not instructed on the natural and probable consequences doctrine or the felony murder rule.

During closing argument, the prosecutor argued that the evidence established that Rivas was the shooter and Carrillo was the driver during the shooting. The prosecutor thus argued that Carrillo was guilty of murder as a direct aider and abettor. Discussing aiding and abetting liability, the prosecutor acknowledged her burden "to show that Mr. Rivas committed the crime, that Mr. Carrillo knew that Mr. Rivas intended to commit the crime, that before or during the commission of the crime, Mr. Carrillo intended to aid and abet Mr. Rivas in committing the crime and that his words or conduct did in fact aid and abet Mr. Rivas's commission of this crime." The prosecutor specifically argued that Rivas and Carrillo "were acting in concert . . . , acting as a unit, which is what fellow gang members do for one another. One could not have committed the crime without the other. And because of that Mr. Carrillo is just as guilty as Mr. Rivas though he did not personally pull the trigger."

On the issue of an intent to kill, the prosecutor noted that "implied malice would apply to . . . simply shooting a firearm into an occupied vehicle" in that one could "reasonably expect that someone will die from that. But in this case," she continued, "[T]here's strong evidence of intent to kill, express[] malice. . . . [S]even shots fired into the passenger compartment of this compact car. [¶] The trajectory of the bullets in this case aimed straight for where . . . people in the car are sitting, not shooting at the back of the car, not shooting at the tires, shooting into where everyone was sitting. And they hit their mark. When you look at that and look at these pictures of the trajectory, that is intent to kill."

4

The prosecutor also argued that the evidence supported the specific factual findings that the killing was willful, deliberate, and premeditated and was also committed by shooting from a motor vehicle. The prosecution argued that the crime was conceived in retaliation for the killing that morning of a Sureño gang associate: "That morning, a Sureño gang associate was murdered. Sureños are going to retaliate. They can't appear weak and they can't allow themselves to be disrespected. They can't allow their rivals to kill without payback. [¶] Valentin Rivas and Benjamin Carrillo hopped into the family van to go hunting, looking for a Northerner to kill." As this court noted in affirming Carrillo's conviction on appeal, the prosecutor argued that Carrillo's driving the van— speeding to harass the occupants of first one car and then another, as Rivas challenged the occupant to claim their gang allegiance—was predatory. (*Rivas*, *supra*, 214 Cal.App.4th at p. 1433.)

Carrillo's counsel, like Rivas's counsel, made no argument as to the degree of murder or the existence of express malice, relying exclusively on a theory of mistaken identity.

The jury convicted both Rivas and Carrillo of first degree murder (§ 187, subd. (a)) and firing a gun into an occupied vehicle (§ 246), as well as finding true the sentencing enhancements that a principal discharged a firearm (§ 12022.53, subd. (d)) and that the murder was committed to benefit a criminal street gang (§ 186.22, subd. (b)(1)). Both defendants were found not guilty of attempted murder (§§ 664, 187) of the car's passenger, Ricardo E.

Both Rivas and Carrillo appealed, and this court affirmed their convictions. This court rejected Carrillo's claim on appeal that the trial court erred by failing to instruct the jury on the natural and probable consequences theory of murder. (*Rivas*, *supra*, 214 Cal.App.4th at pp. 1433-1434.)

5

**B.** *Senate Bill No. 1437*

On September 30, 2018, the Governor signed Senate Bill No. 1437 (2017-2018 Reg. Sess.) into law, which amended the Penal Code to modify accomplice liability for murder and the felony murder rule. (Stats. 2018, ch. 1015.) Senate Bill No. 1437 amended the Penal Code "as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § l, subd. (f).) Pursuant to section 1172.6, a defendant convicted of either felony murder or murder based on the natural and probable consequences doctrine can now bring a petition for resentencing if he or she could not be convicted of murder under the current version of the law. (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 843 (*Gentile*), superseded by statute on other grounds as stated in *People v. Hola* (2022) 77 Cal.App.5th 362, 370.)

**C.** *The First Section 1172.6 Petition*

In January 2019, Carrillo filed a petition for resentencing under section 1172.6 alleging that he was eligible for relief. The trial court appointed counsel for Carrillo.

The district attorney filed an opposition to Carrillo's petition for resentencing. The prosecution argued that Carrillo was ineligible for resentencing because he was convicted of murder as a direct aider and abettor and was not convicted upon either a theory of felony murder or a theory of natural and probable consequences.

The following month, defense counsel informed the trial court that he would not be submitting a written response to the district attorney's opposition. Defense counsel stated: "The appellate court in this case found that there were no natural and probable consequences. [¶] Natural and probable consequences were not argued. [Carrillo] was convicted of first degree murder with premeditation and deliberation. I read the whole file."

6

In April 2019, the trial court denied the petition for resentencing after finding that Carrillo failed to state a prima facie case for relief. The trial court noted that "[t]he jury was specifically instructed that [Carrillo] had to have the intent to kill in order to be convicted of murder" and "[t]here was no viable argument that the case was prosecuted under a theory of either felony murder or the natural and probable consequences" theory of murder. The trial court also observed that it had presided over Carrillo's trial and was "very familiar with the facts and the evidence." Carrillo did not appeal from the trial court's denial.

**D.**      *The Second Petition for Resentencing*

In June 2021, Carrillo filed a second petition for resentencing, arguing that he was eligible for relief under section 1172.6.[3]  There is no indication that the trial court held a hearing or took further action the petition, other than a minute order dated the following month, which noted:  "Original petition filed pursuant to section [1172.6] was denied on 4/12/2019."  Carrillo did not appeal or otherwise challenge the trial court's actions on this second petition.

**E.**      *Senate Bill No. 775 and the Third Petition for Resentencing*

The Legislature further modified section 1172.6 via Senate Bill No. 775 (2021-2022 Reg. Sess.), which became effective January 1, 2022.  (*People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388 (*Vizcarra*).)  "Prior to Senate Bill 775, only 'persons convicted of murder under a felony murder or natural probable consequences theory' could file a petition for resentencing.  [Citation.]  Senate Bill 775 . . . broadened the pool of eligible petitioners by allowing a resentencing petition . . . by any person 'convicted of felony murder or murder under the natural and probable consequences doctrine or other theory

---

[3] Carrillo filed a duplicative petition the following day.

under which malice is imputed to a person based solely on that person's participation in a crime.' " (*Ibid.*, fn. omitted; § 1172.6, subd. (a).)

Ten days after Senate Bill No. 775 took effect, Carrillo filed his third petition for resentencing under section 1172.6. He alleged that he was eligible for resentencing, this time citing the legislative amendments made by Senate Bill No. 775, and again requested appointment of counsel. In his attached declaration, Carrillo asserted that "it was inherently prejudicial to partially read the natural and probable consequences to the jury [without] presenting the full felony murder rule instruction in its entirety."

The trial court did not hold a hearing on the petition, nor did it appoint counsel. Instead, it issued an order on January 18, 2022, stating: "Judge Butler previously denied Petitioner's Petition for Resentencing pursuant to Penal Code section 1170.95 on the merits on April 12, 2019. There have been no changes to the statute since Judge Butler's ruling that apply to Petitioner's case, as he was convicted of first degree murder. The court takes no further action as this petition was previously ruled on." Carrillo filed a notice of appeal challenging this order.

## II.    DISCUSSION

### A.    *Successive Petition*

On the threshold issue of whether Carrillo can appeal from the denial of his third petition for resentencing, the Attorney General argues that Carrillo is procedurally barred from pursuing his current appeal because he did not appeal from the denial of his first resentencing petition. We find there is no procedural bar to this appeal because Carrillo here petitioned for resentencing under section 1172.6 as amended by Senate Bill No. 775, which broadened the eligibility pool of those entitled to resentencing. Where a defendant brings a successive petition for resentencing under section 1172.6, citing new legal authority challenging the basis of the trial court's summary denial of the earlier petition, the trial court's denial of the successive petition is an appealable order. (*People v. Farfan* (2021) 71 Cal.App.5th 942, 946-947.) The finality of the prior denial of a section 1172.6

8

petition does not, as a matter of issue preclusion, bar a later petition based on the statute's subsequent amendment by Senate Bill No. 775.  (*People v. Harden* (2022) 81 Cal.App.5th 45, 52 (*Harden*).)  As Carrillo's third resentencing petition is based on new law, we proceed to address the merits of his claims.

**B.**     ***Legal Principles and Standard of Review***

Under section 1172.6, persons previously convicted of felony murder, murder, or attempted murder under the natural and probable consequences doctrine, or any other theory of imputed malice, may petition the court to have their convictions vacated and be resentenced on their remaining counts if they can no longer be convicted of murder or attempted murder under the current law.  (§ 1172.6, subd. (a).)  "Upon receiving a petition in which the information required by this subdivision is set forth or a petition where any missing information can readily be ascertained by the court, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner."  (§ 1172.6, subd. (b)(3).)

After counsel has been appointed to represent a defendant who has filed a facially sufficient petition, a trial court determines whether the defendant has made a prima facie showing that he or she is entitled to relief.  (§ 1172.6, subds. (a)-(c).)  When making the prima facie determination, the trial court may rely on " 'the record [of conviction], including [its] own documents, "contain[ing] facts refuting the allegations made in the petition . . . ." ' "  (*Lewis*, *supra*, 11 Cal.5th 952, 959-960.)  The record of conviction may include the appellate opinion, "the trial evidence, the jury instructions, and closing argument of counsel.  [Citation.]"  (*People v. Lopez* (2022) 78 Cal.App.5th 1, 13; *Lewis*, *supra*, 11 Cal.5th at p. 972.)  " '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.]"  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  But where the record of conviction " ' "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' "  (*Ibid.*)

9

## C.     *Failure to Appoint Counsel Was Not Prejudicial Error*

Carrillo correctly argues that the trial court erred in failing to appoint counsel upon his facially sufficient third petition.  (§ 1172.6, subd. (b)(3); see *Lewis*, *supra*, 11 Cal.5th at p. 963 ["The sentence addressing counsel simply states that if petitioner asks for counsel, counsel 'shall' be appointed.  [Citation.]  It noticeably does not say that counsel will be appointed only after some 'first-step' prima facie showing is made."].)  But because the failure to appoint counsel under section 1172.6 is state law error that is reviewable for prejudice under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, Carrillo bears the burden of " 'showing "it is reasonably probable that if [he] had been afforded assistance of counsel his . . . petition would not have been summarily denied without an evidentiary hearing." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 974.)

At trial, the prosecutor proceeded under a theory that Rivas was the actual killer and Carrillo was guilty of murder as a direct aider and abettor.  Because the Attorney General makes no effort to repudiate the prosecution's trial theory, we assume without deciding that the jury resolved the conflicting eyewitness identification testimony to find that Carrillo was the driver and not the actual killer.[4]

Assuming the jury found Carrillo guilty as a direct aider and abettor, the jury necessarily concluded that he, like Rivas, acted with the intent to kill Lopez.  The jury was correctly instructed with CALCRIM No. 401, on direct aiding and abetting liability. "[U]nder direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another if the accomplice aids the commission of that offense with

---

[4] Our opinion in *Rivas* acknowledged that there was some conflict in the evidence as to which defendant was the driver and which was the shooter. (*Rivas*, *supra*, 214 Cal.App.4th at p. 1415.)  We note that, if evidence is materially different at the prima facie stage of section 1172.6 proceedings, the factual analysis in our prior appellate opinion would not establish law of the case.  (See, e.g., *Harden*, *supra*, 81 Cal.App.5th at p. 50.)

10

'knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends.' " (*Gentile*, *supra*, 10 Cal.5th 830, 843.) Direct aiding and abetting requires "a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) A direct aider and abettor is liable for the acts of the perpetrator, but an aider and abettor's "mental state is [his or] her own; [he or] she is liable for [his or] her mens rea, not the other person's." (*Id.* at p. 1118.) Based on the jury's verdicts finding both Rivas and Carrillo guilty of first degree murder, it is axiomatic that if the jury relied on a theory of direct aiding and abetting liability to convict Carrillo of first degree murder, the jury must have found that Carrillo *knew* that Rivas intended to commit murder and that Carrillo *intended* to aid and abet Rivas in committing the crime of murder. (See CALCRIM No. 401.)

Notably, the jury in this case was *not* instructed on the natural and probable consequences doctrine. "[U]nder the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the 'natural and probable consequence' of the crime the accomplice aided and abetted." (*Gentile*, *supra*, 10 Cal.5th at p. 843.) In other words, under the natural and probable consequences doctrine, the actual killer's intent is *imputed* onto the accomplice " 'based solely on [the accomplice's] participation in the crime' " that ultimately resulted in the killing. (*Id.* at p. 847.)

Accordingly, based on the given jury instructions, the jury convicted Carrillo of first degree murder based on his own malicious intent and *not* on a "theory under which malice is imputed to a person based solely upon that person's participation in a crime." (§ 1172.6, subd. (a).) Thus, Carrillo has not demonstrated prejudicial error from the trial court's failure to appoint counsel, as it is not reasonably probable his petition would not

11

have been summarily denied without an evidentiary hearing. (*Lewis*, *supra*, 11 Cal.5th at pp. 973-974.)

Carrillo, however, argues that the combination of the jury instructions and the prosecutor's arguments render it possible that the jury may have convicted him of first degree murder based on several theories where malice was imputed to him based on his participation in the crime: (1) aiding and abetting an implied malice murder, (2) felony murder, and (3) the natural and probable consequences doctrine. As we explain, we find no merit in any of his contentions.

### 1.      *Aiding and Abetting an Implied Malice Murder*

Carrillo argues that he may have been convicted of aiding and abetting an *implied malice murder*, which, in his view, could mean that he was convicted of murder even if the jury found that he was unaware of Rivas's full state of mind. He argues that the instructions that were given did not clarify that an accomplice must personally harbor a mental state of implied malice or act with conscious disregard for human life.

Preliminarily, we note that the California Supreme Court has concluded that aiding and abetting an implied malice murder remains a viable form of murder liability, notwithstanding the legislative amendments made by either Senate Bill Nos. 1437 or 775. (See *People v. Reyes* (2023) 14 Cal.5th 981, 990; see also *Gentile*, *supra*, 10 Cal.5th at p. 850; *Vizcarra*, *supra*, 84 Cal.App.5th 377, 391-392; *People v. Vargas* (2022) 84 Cal.App.5th 943, 953-955.)

Furthermore, we find *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*), upon which Carrillo relies, to be distinguishable. In *Langi*, the defendant was convicted of second degree murder. (*Id.* at p. 977.) The jury was instructed with CALJIC No. 8.31, which states that a killing is second degree murder if: "1. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. [¶] When the killing is the direct result of such an

act, it is not necessary to prove that the defendant intended that the act would result in the death of a human being." (*Langi*, *supra*, at p. 981.) The jury was also instructed with CALJIC No. 3.01, which states that "A person aids and abets the commission . . . of a crime when he or she: [¶] (1) With knowledge of the unlawful purpose of the perpetrator, and [¶] (2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime, . . . [¶] (3) By act or advice aids, promotes, encourages, or instigates the commission of the crime." (*Langi*, *supra*, at p 981, fn. omitted.)

Based on these instructions, the *Langi* court acknowledged that the jury was permitted to find the defendant guilty of second degree murder "whether or not [he] knew of or consciously disregarded the danger to human life." (*Langi*, *supra*, 73 Cal.App.5th at p. 981.) *Langi* observed that the jury instructions did not state that the aider and abettor must have known that the act he aided was life-threatening, or that he must himself have acted with indifference to human life. (*Id.* at p. 982.) *Langi* noted that "the standard aiding-and-abetting instructions are ill suited to the crime of second degree murder. If, as here, a trial court uses such an instruction without tailoring it to the specifics of that crime, the instruction creates an ambiguity under which the jury may find the defendant guilty of aiding and abetting second degree murder without finding that he personally acted with malice." (*Ibid.*, fn. omitted.) This is because "the second degree murder instruction specified that the direct perpetrator of that crime need not act with the unlawful intent of causing death. Thus, while the perpetrator must have performed the fatal act 'with knowledge of the danger to, and with conscious disregard for human life' (CALJIC No. 8.31), his purpose may have been only to strike or injure, or conceivably only to embarrass, the victim. Since the perpetrator's purpose need not have been to kill the victim, the aider and abettor's knowledge of that purpose similarly need not have been knowledge that the perpetrator aimed to kill." (*Ibid.*; see also *People v. Powell* (2021) 63 Cal.App.5th 689, 714 [CALCRIM No. 401 is "not tailored for" aiding and abetting an implied malice murder].)

13

Carrillo observes that the jury instructions that contained language similar to the ones at issue in *Langi* were given in his case—CALCRIM No. 521 on the degrees of murder, which defined implied malice, and CALCRIM No. 400, which discussed aiding and abetting—but his argument overlooks a critical distinction. Unlike the *Langi* defendant, both Rivas and Carrillo were convicted of *first degree* murder, not second degree implied-malice murder. And the jury in this case was instructed on only two theories of first degree murder—(1) willful, deliberate, and premeditated murder, and (2) shooting from a motor vehicle. As we described *ante*, both theories of first degree murder require an intent to kill. (Cf. *People v. Maldonado* (2023) 87 Cal.App.5th 1257 [jury instructions permitted conviction based on imputed malice when defendant was convicted of first degree lying-in-wait murder, which does not require an intent to kill].) Thus, unlike in *Langi*, the actual perpetrator's purpose was necessarily to kill the victim, and the aider and abettor's knowledge of that purpose must have been knowledge that the perpetrator intended to kill. (See *Langi*, *supra*, 73 Cal.App.5th at p. 982.)

Carrillo, however, claims that the prosecutor's generic references to "the crime" during closing argument left the jury free to infer that Carrillo could be convicted of murder based solely on his intent to participate in a *shooting*, not necessarily a murder. During closing argument, the prosecutor argued that under an aider and abettor liability theory, she was required to prove that "Mr. Rivas committed *the crime*" and that "Mr. Carrillo knew that Mr. Rivas *intended to commit the crime*." (Italics added.) The prosecutor also argued that both Rivas and Carrillo "were acting in concert during the commission of *the crime*" as a "unit." Likewise, CALCRIM No. 401 states that a defendant is guilty of "*a* crime" as an aider and abettor if the defendant knew that the perpetrator "intended to commit *the crime*" and the defendant "intended to aid and abet the perpetrator in committing *the crime*." (Italics added.) Because Rivas and Carrillo were both also convicted of firing a gun into an occupied vehicle (§§ 246, 186.22,

14

subd. (b)(1)), Carrillo maintains that the jury could have found that he intended to aid only the shooting of the car, not murder.

Carrillo's claim that the prosecutor's argument and the jury instructions were vague and ambiguous—only referring to "the crime"—ignores the entirety of the jury instructions. On appeal, we must view jury instructions " 'in the context of the instructions as a whole' " and do not consider them in isolation. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) CALCRIM No. 401 begins by stating: "To prove that the defendant is guilty of *a crime* based on aiding and abetting *that crime*, the People must prove" certain elements. (Italics added.) In other words, CALCRIM No. 401's references to "a crime" and "that crime" both refer to the offense committed by the perpetrator, known by the defendant to be intended by the perpetrator, and likewise intended by the defendant in aiding the perpetrator—not some other charged or uncharged act.[5] As a textual matter, it is not reasonably likely that the jury would have construed the instruction in the way that Carrillo asserts on appeal. (*People v. Solomon* (2010) 49 Cal.4th 792, 822 [defendant challenging instruction as subject to erroneous interpretation must demonstrate it is reasonably likely the jury understood the instruction as asserted by defendant].)

Moreover, the prosecutor's argument was unambiguously contrary to the scenario Carrillo envisions. The prosecutor here never argued that to find Carrillo guilty of first degree murder the jury was required to find only that Carrillo knew that Rivas intended to commit the crime of shooting from a motor vehicle. To the contrary, she maintained that Carrillo and Rivas "act[ed] in concert during the commission of this crime, acting as a

---

[5] In other words, to find that Carrillo aided and abetted first degree murder, "the crime" referenced in the prosecutor's argument and CALCRIM No. 401 would be the crime of first degree murder. Likewise, to find that Carrillo aided and abetted shooting in a vehicle, "the crime" referred to in CALCRIM No. 401 would be shooting into an occupied vehicle.

15

unit"—in planned retaliation for the murder that morning of a fellow Sureño and "hunting" potential Northerners in traffic—with Rivas "challenging [occupants of other cars], trying to provoke a reaction, trying to confirm a rival" and Carrillo "speed[ing] ahead of them, turn[ing] around . . . into this intersection and pass[ing] then them again, circling like a predator, . . . at speeds approximately fifty miles an hour in [a] school zone." (See *People v. Garceau* (1993) 6 Cal.4th 140, 189, abrogated on other grounds in *People v. Yeoman* (2003) 31 Cal.4th 93, 117 [any theoretical possibility of jury confusion based on jury instructions may be diminished by the parties' closing arguments].)

*In re Loza* (2018) 27 Cal.App.5th 797, upon which Carrillo relies, is distinguishable. In *Loza*, the trial court instructed the jury on direct aiding and abetting liability but *also* instructed the jury with the natural and probable consequences theory of aiding and abetting liability. (*Id.* at p. 802.) The trial court in *Loza* thus instructed on both a legally valid theory of murder—direct aiding and abetting—and a legally invalid theory of murder—the natural and probable consequences doctrine. (*Id.* at p. 803.) *Loza* found that the trial court's instructions "told the jurors that they could also find [the defendant] guilty of premeditated murder if they found that he intentionally aided and abetted [the accomplice] in one of the target offenses (breach of the peace, simple assault, exhibiting a firearm, or assault with a firearm), and the nontarget offense ([the victim's] murder) was a natural and probable consequence of one of the target offenses." (*Ibid.*) *Loza* also noted that the first degree murder instruction in that case told the jurors that to constitute a deliberate and premeditated killing, " '*the slayer* must weigh and consider the question of killing and the reasons for and against such a choice, and having in mind the consequences, decides to and does kill.' " (*Id.* at p. 804.) Thus, the jury could have found the actual killer but not the defendant premeditated and deliberated. (*Ibid.*)

During oral argument, Carrillo argued that like in *Loza*, the theory he committed first degree murder did not require that *he* intend to kill the victim and that the instruction specified only that the actual perpetrator must intend to kill. But we find *Loza* to be

16

distinguishable—in this case, the instructions on the differences between first and second degree murder (CALCRIM No. 521) as well as shooting into a motor vehicle did not contain an ambiguous reference to a "perpetrator" or the "slayer"—the instructions given in this case instructed the jury that "*the defendant*" must intend to kill. His argument also ignores that under the instructions for direct aiding and abetting liability, the jury must find that the aider and abettor knew that the perpetrator intended to commit the crime and that the aider and abettor intended to aid the perpetrator in committing the crime. Moreover, unlike *Loza* the jury in this case was *not* instructed on a legally invalid theory of murder—the jury was not given instructions on the natural and probable consequences doctrine. Moreover, as we have determined, CALCRIM No. 401 necessarily requires that under a direct aiding and abetting theory, the aider and abettor must have *known* that the actual killer intended to commit murder and that the aider and abettor *intended* to aid and abet the actual killer in committing the murder.

### 2. *Felony Murder*

Next, Carrillo argues that he may have been convicted of first degree murder under a theory of felony murder. Conceding that the jury was not instructed on the elements of felony murder, he argues that the trial court's fleeting oral reference to felony murder when giving jury instructions, combined with the language in CALCRIM No. 401, permitted the jury to convict him based on a felony murder theory—that he could be found guilty of murder due to his participation in the underlying crime of shooting into an occupied vehicle.

We acknowledge the trial court's erroneous oral reference to "felony murder" in lieu of shooting from a vehicle. However, as we have noted, *ante*, this reference to felony murder was not reflected or defined in the written instructions given to the jury, which correctly recited that Carrillo and Rivas had been prosecuted for first degree murder based on two theories—that the murder was willful, deliberate, and premeditated and the murder was committed by discharging a firearm from a motor vehicle.

17

Moreover, during closing argument, none of the attorneys made any reference to felony murder.

Based on the foregoing, we disagree with Carrillo that it is reasonably likely that the jury relied on the trial court's erroneous reference to felony murder to convict him under that theory. In particular, the California Supreme Court has held that "misreading instructions is at most harmless error when the written instructions received by the jury are correct." (*People v. Box* (2000) 23 Cal.4th 1153, 1212, disapproved on another ground in *People v. Martinez* (2010) 47 Cal.4th 911, 948, fn. 10; *People v. Prieto* (2003) 30 Cal.4th 226, 255 ["misreading of a jury instruction does not warrant reversal if the jury received the correct written instructions"].) And "[i]t is generally presumed that the jury was guided by the written instructions." (*People v. Davis* (1995) 10 Cal.4th 463, 542.)

We also find no merit in Carrillo's claim that the language of CALCRIM No. 401 is susceptible to a theory of felony murder. Carrillo argues again that under *Langi*, a jury could have found that he knew only that the actual perpetrator "intended to commit the *crime*" (italics added) and that he "intended to aid and abet the perpetrator in committing *the crime.*" (See *Langi, supra*, 73 Cal.App.5th at p. 981 [instructing the jury with similar instructions].) But, as we have explained, *Langi* is distinguishable because there the second-degree murder instruction permitted the jury to find the actual perpetrator guilty of second degree murder without an unlawful intent to kill. (*Id.* at p. 982.) Moreover, as we have determined *ante*, CALCRIM No. 401's reference to the "crime" must be read in context of the instruction as a whole—it is the *charged crime*, in this case, first degree murder, that is referenced. The instructions did not permit the jury to find a defendant guilty of *first degree murder* based on aiding and abetting *a shooting*. For these same reasons, Carrillo's claim that the prosecutor's arguments referencing the "crime" are ambiguous must likewise be rejected.

18

### 3. *Natural and Probable Consequences*

Finally, Carrillo argues that the jury could have convicted him of first degree murder under on a natural and probable consequences theory because of CALCRIM No. 400, which states: "Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime." He argues that even though the jury was not instructed with the natural and probable consequences theory as set forth in CALCRIM Nos. 402 and 403, the jury could have seized upon the language in CALCRIM No. 400 to determine that he was guilty of first degree murder if murder was the natural and probable consequences of the "crime" of shooting into a vehicle.

A similar argument was considered and rejected by the Second District in *People v. Estrada* (2022) 77 Cal.App.5th 941 (*Estrada*). In *Estrada*, the defendant was convicted of first degree murder. (*Id.* at p. 945.) In his petition for resentencing under section 1172.6, the defendant argued that he could have been convicted under a natural and probable consequences theory because the jury was instructed with the same challenged language from CALCRIM No. 400. (*Estrada*, *supra*, at p. 946.) Yet the jury in *Estrada* was *only* instructed with CALCRIM No. 401 on direct aiding and abetting liability and not with CALCRIM Nos. 402 and 403 on the natural and probable consequences theory. (*Estrada*, *supra*, at p. 947.) The *Estrada* court held that the giving of CALCRIM No. 400 alone was insufficient to find that the jury was instructed on a natural and probable consequences theory. (*Estrada*, *supra*, at p. 947.)

In part, *Estrada* relied on the California Supreme Court's analysis of former CALCRIM No. 400 and CALCRIM No. 401 in *People v. Johnson* (2016) 62 Cal.4th 600 (*Johnson*). (*Estrada*, *supra*, 77 Cal.App.5th at p. 947.) In *Johnson*, the jury was instructed with the former language of CALCRIM No. 400, which differs from the current version in that it states that " '[a] person is *equally guilty* of the crime whether he committed it personally or aided and abetted the perpetrator who committed it.' "

19

(*Johnson*, *supra*, 62 Cal.4th at p. 638.) The *Johnson* court rejected the argument that the jury may have reasonably believed the "equally guilty" language in former CALCRIM No. 400 permitted the jury to determine the defendant's criminal liability based on his accomplice's mental state rather than his own. (*Johnson*, *supra*, at pp. 640-641.) *Johnson* observed that the jury was instructed with CALCRIM No. 401, which set forth the requirements of aider and abettor liability. (*Id.* at p. 641.) *Johnson* held that CALCRIM No. 401 informed the jury "that for them to find defendant guilt of murder as an aider and abettor the prosecution must prove that defendant knew [the accomplice] intended to kill [the victim], that he intended to aid and abet [the accomplice] in committing the killing, and that he did in fact aid him in that killing, which would have cleared up any ambiguity arguably presented by former CALCRIM No. 400's reference to principals being 'equally guilty.' " (*Id.* at p. 641.)

We also rejected a similar argument raised by Carrillo in his direct appeal. In *Rivas*, *supra*, 214 Cal.App.4th 1410, Carrillo argued that the trial court infringed on his federal constitutional rights and erred under state law because CALCRIM No. 400 referenced the natural and probable consequences doctrine, but the jury was not instructed with CALCRIM No. 403. (*Rivas*, *supra*, at pp. 1431-1432.) Because the jury was not instructed with CALCRIM No. 403, Carrillo claimed that the jury was invited to conjure its own avenues to find him guilty of the crimes of which he was convicted. (*Id.* at p. 1432.) On appeal, we found Carrillo's claim to be without merit because the parties made no reference to the natural and probable consequences doctrine at trial, rendering it highly unlikely the jury would have relied upon the rule. (*Id.* at p. 1432; *People v. Prettyman* (1996) 14 Cal.4th 248, 273.) Moreover, we explained that the giving of the language in CALCRIM No. 400, though "superfluous," was "meaningless" without CALCRIM No. 403. (*Rivas*, *supra*, at p. 1433.)

Carrillo argues that his case is analogous to *People v. Pacheco* (2022) 76 Cal.App.5th 118, review granted May 18, 2022, S274102, which directed the trial court

20

to issue an order to show cause on the defendant's section 1172.6 petition for resentencing, and *People v. Sanchez* (2022) 75 Cal.App.5th 191, which reversed the defendant's attempted murder conviction. However, both *Pacheco* and *Sanchez* are distinguishable on their facts. In *Pacheco*, the Fourth District concluded that the jury's true finding on a gang special circumstance established that the defendant *intended* to kill the victim, but the gang circumstance did not establish as a matter of law the *actus reus* that the defendant directly aided and abetted the killing. (*Pacheco*, *supra*, at p. 128.) Unlike *Pacheco*, the jury here was instructed on direct aiding and abetting liability; there is thus no question that if the jury convicted Carrillo under the direct aiding and abetting theory of liability, it necessarily found that he committed the actus reus of directly aiding the actual perpetrator. And in *Sanchez*, the jury was instructed with both direct aiding and abetting liability *and* the natural and probable consequences doctrine. (*Sanchez*, *supra*, 75 Cal.App.5th at p. 195.)

Nonetheless, Carrillo argues that the prosecutor's argument invited the jury to consider the natural and probable consequences doctrine, as the prosecutor argued that Rivas and Carrillo acted as a "unit" without distinguishing the evidence as to each defendant. There is nothing ambiguous or confusing about the prosecutor's argument in this case. The gist of the prosecutor's argument was that Carrillo and Rivas were both equally liable for murder, attempted murder, and shooting into an occupied vehicle either as the actual perpetrator or as a direct aider and abettor of the charged crimes. The jury was likewise instructed that "[t]o prove that the defendant is guilty of *a crime* based on aiding and abetting *that crime*, the People must prove" certain elements. The only logical reading of this instruction is that to find a defendant guilty of a specified crime based on aiding and abetting that same specified crime, certain elements must be proven by the prosecution. We do not find that it reasonably likely that a jury would presume that it could find a defendant guilty of the crime of murder based on aiding and abetting *some other* crime such as shooting into an occupied vehicle. (See also *People v. Cortes* (2022)

21

75 Cal.App.5th 198, 205-206 [prosecutor's argument referencing natural and probable consequences theory did not render defendant eligible for resentencing under section 1172.6 when jury was not instructed on theory of murder where malice could be imputed].)

Moreover, we disagree with Carrillo's contention that his acquittal of attempted murder suggests that he may have been convicted on a theory that required less than an intent to kill. The first degree murder charge and the attempted murder charge concerned two different victims—Lopez and Lopez's passenger Ricardo E., respectively—and the jury acquitted Rivas and Carrillo alike on the latter count. (*Rivas*, *supra*, 214 Cal.App.4th at p. 1410 [noting identical verdicts and true findings as to both defendants].) That the jury may have found that Carrillo and Rivas did not have the intent to kill Ricardo E. is not a basis to doubt its finding that both intended to kill Lopez. Carrillo provides no reasoned argument why the defendants' intent as to Ricardo E. should be deemed dispositive of their intent as to Lopez. Carrillo argues only that "[r]espondent fails to provide any scenario as to how under the facts here appellant could have intended to kill the deceased victim and not the other person in the vehicle," which is insufficient to satisfy his burden to demonstrate a prima facie case for relief. (See § 1172.6, subd. (c) [trial court shall hold evidentiary hearing only if "the petitioner has made a prima facie case for relief"].) Yet as the trial court instructed and the prosecutor argued, to prove that either defendant intended to kill Ricardo E., the People had to prove that the perpetrator "not only intended to kill [Lopez], [but also] either intended to kill Ricardo E., or intended to kill everyone within the kill zone." The jury could have concluded that Rivas and Carrillo intended only to kill Lopez—the only occupant of the car the prosecutor argued had responded to Rivas's challenge by confirming his

22

identification as a Northerner—and that the shots fired into the car were meant for Lopez only.[6]  Such a conclusion is neither illogical nor implausible.

**D.**  *Conclusion*

As the record of conviction reflects that Carrillo was not convicted of murder under a theory where malice was imputed to him, he is ineligible for relief under section 1172.6 as a matter of law.  Thus, he cannot show that the failure to appoint counsel was prejudicial, and the trial court's order denying his petition must be affirmed. (See *Estrada*, *supra*, 77 Cal.App.5th at p. 945; *People v. Coley* (2022) 77 Cal.App.5th 539, 547-548; *Cortes*, *supra*, 75 Cal.App.5th at pp. 205-206.)

### III.  DISPOSITION

The trial court's order denying Carrillo relief under section 1172.6 is affirmed.

---

[6] Nothing in the record of conviction reflects any allegation that Ricardo E. was injured.  Unlike the firearm enhancement pleaded and proven under subdivision (d) of section 12022.53 as to the murder count, the firearm enhancement alleged as to count 2 was under subdivision (c), which requires no proof of injury.  We note as well that the prosecutor's closing argument identified only Lopez, not Ricardo E., as having confirmed his identification as a Northerner.

_____

LIE, J.

WE CONCUR:

_____

GREENWOOD, P.J.

_____

GROVER, J.

*People v. Carrillo*
H049877